NO. 07-10-00129-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 7, 2011

SCOTT EDWARD SATTLER, II, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE COUNTY COURT AT LAW NO. 2 OF BRAZOS COUNTY;

NO. 09-03497-CRM-CCL2; HONORABLE JAMES W. LOCKE, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Scott Edward Sattler, II, appeals from his jury conviction of the offense of assault bodily injury—dating violence and the resulting sentence of confinement for 365 days, suspended in favor of community supervision for a period of 18 months. Through a single issue, appellant contends the trial court erred in denying his motion for new trial, based on a *Brady*[1] violation complaint. We will affirm.

---

[1] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Background

On August 6, 2009, after an argument, appellant and his girlfriend of three weeks had a physical altercation that resulted in injuries to the girlfriend. She testified he hit her three times in the face and neck. Although appellant did not testify at trial, evidence showed he claimed the girlfriend attacked him first.

On appeal, much of appellant's argument focuses on the evidence he suffered bruises from blows from the girlfriend. At trial, the only law enforcement officer to testify said he saw visible marks on the left side of the girlfriend's neck but did not see any visible marks on appellant despite his complaints that his face, arms, and right side hurt. A doctor testified he examined appellant five days after the altercation and observed three bruises, one on appellant's upper right arm, one near his right clavicle and one just above his knee.[2] The doctor testified the bruises were consistent with appellant's statement that his girlfriend struck him on August 6.

Appellant was arrested by a College Station police officer and was first taken to the city jail. He was later transferred to the Brazos County jail. Medical intake was performed at each jail. At trial, a College Station officer read from the medical intake records from the city jail. The statements he read before the jury refer to complaints by

---

[2] The record also contains evidence of an injury near appellant's left eye. His girlfriend admitted to throwing a yogurt carton at appellant, striking his left eye. The jury also saw appellant's booking photograph introduced by the defense at trial. Defense counsel asked the College Station police officer, referring to the photograph, if a slightly red mark on appellant's eye might indicate he was struck. Defense counsel again referenced the booking photograph in his closing argument at the guilt innocence phase, noting "[t]he eye looks red. Looks to be a mark on the right inside of the eye."

appellant that his face and arms hurt from the fight. They also said there were no visible marks except for old bruises.

At the hearing on appellant's motion for new trial, a Brazos County detention officer testified the records collected at the county jail included appellant's medical history taken by the jail staff the morning he was booked into the county jail. He testified the records refer to bruises on appellant's right thigh, right arm and shoulder area. He also testified this information was most likely volunteered by appellant as inmates are not asked to remove their clothing for the medical assessment. An employee of appellant's counsel also testified, stating she served a subpoena for appellant's records on the Brazos County jail. The subpoena was issued on the day of trial, January 20, 2010. The employee collected the requested records the same day, before closing arguments began. Although she collected the records in the courthouse, she took them back to counsel's office.

The trial court denied appellant's motion for new trial.

Analysis

In his sole point of error, appellant challenges the trial court's denial of his motion for new trial. He contends the State was required to disclose the county jail medical intake records kept by the Brazos County Sheriff's Office under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant asserts the evidence of the existence of bruises in those records specifically refuted the testimony of the only law enforcement officer to testify at trial. If the new trial had been granted and the evidence

3

admitted, appellant argues, there is a reasonable probability that the result of the trial would have been different.

At the guilt-innocence phase of trial, the court charged the jury on self-defense. Tex. Penal Code Ann. § 9.31 (West 2010). The charge properly placed on the State the burden to disprove appellant's contention his use of force was justified by his reasonable belief it was immediately necessary to protect himself against his girlfriend's use of unlawful force. Tex. Penal Code Ann. § 9.31(a) (West 2010); *see Rodriguez v. State,* 212 S.W.3d 819, 821 (Tex.App.—Austin 2006, no pet.), *citing Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App. 2003) (when justification is raised by the evidence, the State bears the burden of proving beyond a reasonable doubt the defendant's conduct was not justified by self-defense).

We review the granting or denial of a motion for new trial under an abuse of discretion standard. *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App. 2004). As the reviewing court, we do not substitute our judgment for that of the trial court, rather we decide whether the trial court's decision was arbitrary and unreasonable. *Id.* Further, we must view the evidence in the light most favorable to the trial court's ruling and presume all reasonable factual findings that could have been made against the losing party were made. *Id.* Accordingly, a trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* The ruling of the trial court will be upheld if it is supported by the record and is correct under any theory of law applicable to the case regardless of the trial court's stated basis. *State v. Stevens,* 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

4

Under *Brady,* 373 U.S. 87, the State has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to disclose evidence favorable and material to a defendant's guilt or punishment. *Harm v. State,* 183 S.W.3d 403, 406 (Tex.Crim.App. 2006). Once such exculpatory evidence comes into its possession, the State's duty under *Brady* attaches, with or without a request from the defense for disclosure. *Id.* For a court to find reversible error under *Brady*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, *i.e.* there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). We must analyze the alleged *Brady* violation "in light of all the other evidence adduced at trial." *Id.* at 612-13. And we do not apply the separate harmless error standard for reversal for constitutional error contained in rule 44.2(a) of the Texas Rules of Appellate Procedure. *Id.* at 612.

On appeal, the State argues appellant was aware of the exculpatory information, and his medical records were fully accessible to him. It also argues appellant waived any *Brady* complaint by not seeking a continuance. Finally, it contends appellant has failed to show the county jail medical records were material. We focus on the State's contention regarding materiality, and do not address the others. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *Hampton,* 86 S.W.3d at 612; *West v. State,* No. 10-07-00100-CR, 2008 Tex.App. LEXIS 9062, at *5-6 (Tex.App.—Waco Dec. 3, 2008, pet. dism'd) (mem. op.,

not designated for publication). Rather, the inquiry is whether the State's failure to disclose the evidence undermines confidence in the jury's verdict. *Lempar v. State,* 191 S.W.3d 230, 241 (Tex.App.—San Antonio 2005, pet. ref'd); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App. 1992).

Appellant contends the county jail medical intake record was material to his self-defense claim because it documented he was bruised at the time he entered the jail. He argues the State tried to cast doubt on his injuries. Appellant highlights the two statements in the State's closing argument in which the prosecutor said appellant never complained of any injuries and decided "that maybe he was injured after his arrest." He also points us to the responding officer's testimony that he did not see any injuries on appellant the night of the altercation. Appellant asserts if the jury knew that a sheriff's office employee was aware appellant complained of bruises before appellant left the custody of law enforcement but after the altercation, there is a reasonable probability the jury would have concluded the State had failed to disprove he acted in self-defense.

We find the trial court reasonably could have concluded the county jail medical history notations of appellant's bruises were not material under *Brady*. The reasonableness of appellant's response to his girlfriend's actions was the central focus of the trial. Although the State disparaged the effectiveness of the girlfriend's blows, it did not dispute the existence of appellant's bruises. During her testimony, the girlfriend admitted she may have struck him with her hands, feet and knees. The jury also heard from the physician, without objection, that he observed bruising on appellant's right upper arm, right clavicle and right thigh when he examined him five days after the

6

altercation. The doctor's medical notes documenting the bruises were admitted into evidence along with pictures of each bruise. The bruises the doctor noted were in the same locations as those referred to in the jail medical history.

The officer responding to the 911 calls both appellant and the girlfriend made testified he did not see any injuries on appellant the night of the altercation, took appellant at his word that he was not injured, and did not believe appellant had been hit by his girlfriend. But he also acknowledged some injuries do not become visible until later. The trial court could have considered it clear that the officer's testimony was based on his observations shortly after the altercation.

The absence of jailhouse documentation of appellant's bruises did not keep him from presenting his claim of self-defense to the jury. The trial court reasonably could have considered the evidence was cumulative of the evidence of bruising appellant introduced through the doctor's testimony and the photographs he identified. *See, e.g., McDonald v. State,* No. 04-05-00128-CR, 2006 Tex.App. LEXIS 7416, at *15-16 (Tex.App.—San Antonio Aug. 23, 2006, no pet.) (mem. op., not designated for publication) (finding asserted *Brady* evidence similar to other evidence seen by jury and thus not material).

As noted, appellant's claim of self-defense raised the issue whether his use of force against his girlfriend was justified by his reasonable belief it was immediately necessary to protect himself against her use of unlawful force. The jury found the State had disproved that contention beyond a reasonable doubt. Under his contention on appeal, to satisfy his burden to demonstrate the materiality of the county jail medical

history records, appellant was required to show the trial court there was a reasonable probability the jury would have reached a contrary decision if he had been provided with the records before trial. Viewing the entire record in the light most favorable to the trial court's ruling, it did not abuse its discretion by finding appellant had failed to show such a reasonable probability. The court did not err by denying appellant's motion for new trial. We resolve appellant's sole issue against him and affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.